*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2016-287

DECEMBER TERM, 2016

In re S.D., D.D., M.D. and Z.D., Juveniles     }     APPEALED FROM:
                                               }
                                               }     Superior Court, Chittenden Unit,
                                               }     Family Division
                                               }
                                               }     DOCKET NOS. 291/292/293-10-13
                                                               & 415-12-14 Cnjv

                                                     Trial Judge: Thomas J. Devine

In the above-entitled cause, the Clerk will enter:

Mother and father both appeal termination of their parental rights to four children, S.D., D.D., M.D., and Z.D., born in January 2007, August 2009, March 2012, and January 2015, respectively. On appeal, mother argues that the court misconstrued the fourth statutory best-interests factor as relating solely to whether the parent can play a constructive role as a custodial parent. Father argues that he has a strong bond with the children and requests that if mother's parental rights are restored he would like visitation with the children. We affirm.

The court found the following facts. Parents met and were married in 2006 and divorced in August 2015. Mother was the primary caregiver. The Department for Children and Families (DCF) first became involved with the family in 2010 based on reports of S.D.'s erratic school attendance, concerns about D.D.'s teeth and M.D.'s untreated ear infections, the children's hygiene, the living conditions in the home, and housing instability.

Parents have a tumultuous and volatile relationship. They have had loud verbal arguments and physical altercations. Even after parents' divorce they remained in contact and there was ongoing conflict. Their relationship is toxic.

DCF filed petitions alleging the three older children were in need of care or supervision (CHINS) in October 2013. The children remained with mother under a conditional custody order, which required mother to ensure that the children attended school or daycare, that no other adults stayed in the home, and that mother attend counseling, take medication, and engage in parent education. In October 2013, father was arrested on felony charges of unlawful restraint, lewd and lascivious conduct, and a misdemeanor prohibited act. The parents admitted the allegations in the CHINS petition in December 2013. The initial disposition entered in February 2014 continued conditional custody with mother and allowed visits with father. It required parents to engage in mental health counseling, work with parent educators, and ensure the children attended school and daycare. In addition, mother was required to follow the rules that were necessary to maintain her housing and father was required to follow his conditions of probation. In April 2014, the court granted the State's motion for DCF custody based on mother's failure to attend counseling, the

unsanitary conditions in mother's home, S.D.'s poor attendance record, and the bed bug bites covering the children. The children have remained in DCF custody since then. After coming into DCF custody, the children were taken for checkups and given assessments. M.D. has developmental delays and was diagnosed with hearing loss. S.D. had extensive dental work done and was evaluated for special education services. He also was diagnosed with asthma and started participating in counseling. D.D. was referred for counseling based on her bathroom accidents, biting her nails and withdrawal. In October 2014, DCF submitted a revised case plan with concurrent goals of reunification and adoption.

A family time coach was assigned to work with mother. Mother had good attendance and although she made some progress, she remained unable to provide attentive care for longer periods of time and the same issues regarding parenting kept reappearing. In addition, although mother expressed fear of father, she continued to have contact with him. Visits occurred at DCF instead of in the home because of safety concerns around father appearing at the home. There was also concern about the choices mother was making in her relationships. She had a boyfriend that she allowed to be around the children, but one child alleged that the boyfriend touched his penis and mother found pornography on the boyfriend's computer that might have included children. Additionally, mother had the children visit with her father, who had sexually abused her as a child.

A parent educator was assigned to work with father between July and December 2015. Father did not make progress with the goals of parent education. He spoke insensitively to the children, engaged in inappropriate conversations with them, and was unable to focus for a whole hour. Family time coaching with father ceased due to lack of progress.

DCF had a parenting capacity evaluation performed by a clinical psychologist. The court credited her findings, which were as follows. Mother struggled to set boundaries and limits with the children, there remained concerns about hygiene, and mother did not meet a threshold minimum for parenting ability. Further, mother's relationship with father was a risk factor. The court also credited the psychologist's finding that father was not yet able to meet minimum parenting standards.

Z.D. came into DCF custody right after her birth in January 2015. In October 2015, she was adjudicated CHINS based on mother's admission. A motion to terminate parental rights was filed by DCF in December 2015. Meanwhile, in February 2015, the three older children filed petitions to terminate parents' rights. A combined termination hearing was held as to all four children.

The court concluded that there had been a substantial change in circumstances from the time of the initial disposition order relative to S.D., D.D., and M.D. due to parents' stagnation. Father had made some progress, but he was without housing, struggled to maintain law-abiding behavior, and most importantly had not made progress in learning to meet the children's needs. Mother had engaged in visitation and had adequate housing, but had not engaged consistently in individual therapy and had not been able to retain information about parenting. In addition, the parties continued to maintain a toxic relationship, which presented safety risks. The court evaluated the best interests of all the children. The court found that parents love the children, but that at least two of the children are well adjusted to their current home, school and community where their unaddressed medical, educational, and emotional needs were being addressed. The court noted that there was little evidence with respect to the details of the home life of the other

two in their pre-adoptive home.  The court further found that parents would not be able to resume parenting within a reasonable period of time.  Despite the passage of two years, parents had not been able to gain sufficient parenting skills to parent the children.  Finally, the court found that parents did not play a constructive role in the children's lives, emphasizing that prior to DCF involvement the children were not going to school regularly, had not received needed dental treatment or medical treatment, and lacked stable housing or basic hygiene.

Both parents have appealed the termination order.  Because there was a prior disposition order, to terminate the parents' rights to S.D., D.D., and M.D. the court was required to first consider whether there was a change in circumstances.  33 V.S.A. § 5113(b).  A change of circumstances can be shown when a parent's ability to care for children "has either stagnated or deteriorated over the passage of time."  In re S.W., 2003 VT 90, ¶ 4, 176 Vt. 517 (mem.) (quotation omitted).  The court must then determine whether termination is in the children's best interests.  33 V.S.A. § 5114(a).  The family court may terminate parental rights at the initial disposition proceeding if the court finds by clear and convincing evidence that termination is in the child's best interests.  In re J.T., 166 Vt. 173, 177 (1997).  In assessing the child's best interests, the court must consider the statutory criteria.  33 V.S.A. § 5114(a).  The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time.  In re J.B., 167 Vt. 637, 639, (1998) (mem.).  On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous.  Id.

On appeal, mother argues that the court misconstrued the fourth statutory factor, which requires the court to consider "whether the parent has played and continues to play a constructive role, including personal contact and demonstrated emotional support and affection, in the child's welfare."  33 V.S.A. § 5114(a)(4).  Mother claims that the court improperly focused on each parent's role as a custodial parent and did not consider the value of the parent's relationship with the children in a noncustodial role.  There was no error.

The court did not distinguish between custodial and non-custodial roles in evaluating whether they have played a constructive role.  Nor was it required to.  The court followed the statutory requirements by considering whether the parents had played a constructive role in the children's lives.  It considered their engagement with the children both before and after the children entered custody.  In its analysis of the fourth factor, the court listed the negative impact of parents' role in the children's lives when they were living with the children, including the failure to meet the children's educational, medical, dental, and housing needs and the violence in the home.  The court further found that since then parents had not addressed these core issues.

Mother contends that the court should also have considered the bond that parents had with the children.  But the court did recognize the love that parents have for their children and especially recognized the bond father has with S.D.  The court weighed this against the other factors and concluded that termination was in the children's best interests.  The court emphasized that parents had been working for two years and were still unable to meet a minimum basic level of parenting.  These findings support the court's conclusion that termination was in the children's best interests.  It was up to the court to weigh the evidence and determine the relevance of this evidence to the role the parents played in the children's lives.  In re B.C., 2013 VT 58, ¶ 21, 194 Vt. 391 (explaining that family court has discretion to determine witness credibility and weight of evidence).

3

Father argues that the children should be returned to mother and that his parental rights should be maintained for the purpose of visiting with the children in the context of their mother's custodial care. Because we are affirming termination of mother's parental rights, we need not consider father's request to allow him visitation if mother's rights are preserved.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice